UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pat Nilsen and John Nesse, *as Trustees of the Carpenters and Joiners Welfare Fund*, and Wayne Nordin and Pat Nilsen, *as Trustees of the Carpenters and Joiners Apprenticeship and Journeymen Training Trust Fund, and each of their successors*,

Plaintiffs,

v.

Top Down Construction LLC, *a/k/a top down construction L.L.C.*,

Defendant.

File No. 25-cv-3174 (ECT/LIB)

**OPINION AND ORDER**

Samuel Schultz and Amanda R. Cefalu, Reinhart Boerner Van Deuren S.C., Minneapolis, MN, for Plaintiffs Pat Nilsen, John Nesse, and Wayne Nordin.

Plaintiffs Pat Nilsen and John Nesse, as Trustees of the Carpenters and Joiners Welfare Fund, and Wayne Nordin and Pat Nilsen, as Trustees of the Carpenters and Joiners Apprenticeship and Journeymen Training Trust Fund (collectively, the "Funds"), seek entry of a default order and injunction against Defendant Top Down Construction LLC ("Top Down"). ECF No. 26. The Funds allege that Top Down breached the terms of a collective bargaining agreement and violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, by failing to produce necessary payroll and employment

records for audit.  The order the Funds seek would require Top Down to produce the necessary records.  The Funds' motion will be granted in part.[1]

The basic process for determining whether a default judgment should be entered is straightforward.  Entry of default means that the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  10A Mary K. Kane & Adam N. Steinman, *Federal Practice and Procedure: Civil* § 2688.1 (4th ed. Sep. 2025 Update) (footnotes omitted).  Thus, it must first be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).  If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the other terms of the default judgment must be determined.  But "a default judgment cannot be entered until the amount of damages has been ascertained."  *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (quotation omitted).

Here, the Funds seek a default order compelling the production of records, and an audit of those records is necessary to determining whether Top Down owes benefit contributions that might then be the subject of a final default judgment.  This is the Funds' second motion for a default order and injunction.  A hearing on their first motion was held

---

[1]    The Clerk properly entered Top Down's default.  ECF No. 24.  The Summons and Amended Complaint were served on Top Down on December 4, 2025, ECF No. 20, but it has not responded or otherwise appeared.  *See* Docket; *see also* Schultz Decl. [ECF No. 22] ¶¶ 10–11.  The Funds also served the motion for default judgment and supporting papers on Top Down.  ECF Nos. 23, 25, 32.  A hearing on the motion was held on February 23, 2026.  ECF No. 33.  Top Down did not appear or otherwise respond.

on November 3, 2025.  ECF No. 16.  At that hearing, I raised issues regarding the correct period for which the Funds seek records for audit and review and the potential preclusive effect of prior court rulings regarding Top Down's liability to the Funds.  The Funds stated their intent to file an amended complaint clarifying the period they seek to audit, and I requested briefing regarding the preclusion issue.  On December 1, 2025, the Funds filed an Amended Complaint, ECF No. 18, and they addressed the preclusion issue in the supporting memorandum, ECF No. 28.

Start with the factual allegations in the Amended Complaint, which are accepted as true.  Plaintiffs Pat Nilsen and John Nesse are trustees and fiduciaries of the Carpenters & Joiners Welfare Fund.  Am. Compl. [ECF No. 18] ¶ 1.  Nilsen and Plaintiff Wayne Nordin are trustees and fiduciaries of the Carpenters & Joiners Apprenticeship and Journeyman Training Trust Fund.  *Id.* ¶ 2.  Each of the Funds is "a multi-employer jointly trusteed employee benefit plan created and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act" and "administered in accordance with [ERISA]."  Am. Compl. ¶¶ 1–2.  Top Down is a Minnesota limited liability company that employs individuals in the construction industry.  *Id.* ¶¶ 4–5.

Top Down has entered labor agreements requiring payment of fringe benefit contributions for its employees.  *Id.* ¶¶ 10, 13.  Specifically, on April 22, 2022, Top Down agreed to be bound by the terms of a collective bargaining agreement between the North Central States Regional Council of Carpenters and the Northern Minnesota Contractors Association/Twin Ports Contractors Association of Minnesota (Locals 361, 606, and 1934) (the "CBA").  *Id.* ¶ 10; Causby Decl. [ECF No. 29] ¶ 3.  Top Down remains bound by the

3

CBA. Am. Compl. ¶ 11; Causby Decl. ¶ 6.[2] Each of the Funds "is established and operates pursuant to a written agreement and declaration of trust" (collectively, the "Trust Agreements") that "are incorporated by reference into and are a material part of the CBA to which [Top Down] agreed to be bound." Am. Compl. ¶ 12. By executing the CBA, Top Down "agreed to adopt the terms of the Trust Agreements under which each Fund is established and governed, thereby ratifying all actions taken or to be taken by the trustees in the scope of their authority." *Id.* The CBA and Trust Agreements require Top Down, as a signatory employer, to make monthly fringe benefit contributions to the Funds for each hour worked by covered employees. *Id.* ¶ 13; Causby Decl. ¶ 7. The CBA and Trust Agreements require Top Down to submit monthly reports to Wilson-McShane Corporation—the administrative agent designated by the Funds—documenting the number of hours worked for all covered employees, along with payment for the fringe benefit contributions due for that reported month. *See* Am. Compl. ¶¶ 14, 29. Employers who do not submit timely reports or make timely contributions are "delinquent." *Id.* ¶¶ 15, 30. Delinquent employers must pay the Funds liquidated damages equal to 10% of the contributions owed plus interest on those unpaid contributions, or if greater, twice the interest owed on the unpaid contributions. *Id.* ¶ 31; Causby Decl. ¶ 17; ECF No. 29-2 Art. 20 ¶ (D); ECF No. 29-3 Art. 20 ¶ (D). Delinquent employers must also pay attorneys' fees

---

[2]   The Funds have submitted two CBAs—one effective through April 30, 2023, ECF No. 29-2 Art. 22 ¶ (C), and the other effective through April 30, 2027, ECF No. 29-3 Art. 22 ¶ (C).

and other costs.  Am. Compl. ¶ 33; Causby Decl. ¶ 19; ECF No. 29-2 Art. 20 ¶¶ (G)–(H);

ECF No. 29-3 Art. 20 ¶¶ (G)–(H).  The CBA also provides that

> "[e]ach Employer who is required to make payments to the Trust Funds shall promptly furnish to the Trustees or their authorized agents, on demand, all necessary employment and payroll records, and any other relevant information relating to its employees covered by this Agreement for examination" when deemed necessary by the Trustees or their authorized agents in connection with the proper administration of the Funds.

Am. Compl. ¶ 21; Causby Decl. ¶ 8; *accord* ECF No. 29-2 Art. 20 ¶ (H); ECF No. 29-3

Art. 20 ¶ (H).  This examination is meant to determine compliance with the fringe benefit

contribution reporting obligations.  Am. Compl. ¶ 22.  The CBA further provides that if an

"Employer fails or refuses to furnish its payroll records to the Trustees or their authorized

agents upon demand . . . the Trustees may enforce such right by legal action in which event

all attorney fees, service fees, filing fees, court reporter fees and other legal costs . . . shall

be paid by such Employer."  Am. Compl. ¶ 33; ECF No. 29-2 Art. 20 ¶ (H); ECF No. 29-3

Art. 20 ¶ (H); *accord* Causby Decl. ¶ 19.

The Funds allege that on February 21, 2025, Wilson-McShane requested that Top

Down produce "a complete set" of payroll and employment records for an audit of the

period of May 2020 through February 2025.  Am. Compl. ¶ 23; Causby Decl. ¶ 9; *see* ECF

No. 29-4 at 2 (Wilson-McShane request).  The Funds further allege that on July 15, 2025,

the Funds sent Top Down a letter demanding the payroll and employment records for the

period of May 2020 through February 2025.  Am. Compl. ¶ 24; Causby Decl. ¶ 10.  "In

November of 2025, the Funds learned from Wilson-McShane Corporation that [Top Down]

had previously undergone an audit for the period ending December 31, 2022." Am. Compl. ¶ 26. Therefore, the Funds allege that the "relevant time period for which [Top Down] must submit to a compliance audit is therefore January 1, 2023, through the present (the 'Audit Period')." *Id.* The Funds allege Top Down has failed to respond to their requests for a compliance audit for the Audit Period. *Id.* ¶ 27; Causby Decl. ¶ 12.

These taken-as-true allegations establish that Top Down has breached its obligation to produce employment and payroll records to the Funds. Top Down is an employer under ERISA. *See* Am. Compl. ¶¶ 5, 32; 29 U.S.C. § 1002(5) (defining employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan"). ERISA requires Top Down to fulfill its contribution obligations to multiemployer plans "under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145. Top Down agreed to be bound by the terms of the CBA. Am. Compl. ¶ 10. The CBA and Trust Agreements require Top Down to provide employment and payroll records for examination upon demand. *Id.* ¶¶ 21, 35. The Funds allege that Top Down has not provided those records. *Id.* ¶¶ 25, 27; Causby Decl. ¶ 12. Thus, the Funds' taken-as-true allegations constitute a legitimate cause of action under ERISA and the CBA.

The next step is determining whether the Funds are entitled to the relief they seek. The Funds' proposed default order and injunction would compel Top Down to produce specified employment and payroll records for audit for the period from January 1, 2023, through the date of this Order. ECF No. 31 at 4. In addition to the delineated records, the Funds' proposed order would require Top Down to produce additional records as deemed

necessary by the Funds' representatives. *Id.* at 5. The Funds' proposed order would then allow the Funds, on completion of the audit and in the event Top Down fails to make the requisite payments, to move for entry of a money judgment for all unpaid contributions, liquidated damages, interest, and reasonable attorneys' fees and costs. *Id.*

ERISA provides for injunctive relief to enjoin or redress an act or practice that violates the terms of ERISA or a plan governed by it. 29 U.S.C. § 1132(a)(3). A court may also order "other legal or equitable relief." *Id.* § 1132(g)(2)(E). "Injunctive relief requiring a defendant to produce specific records and to cooperate with an audit, as [the Funds] seek here, is consistent with ERISA." *Raines v. Phoenix Corp.*, No. 19-cv-2552 (WMW/KMM), 2020 WL 814189, at *2 (D. Minn. Feb. 19, 2020) (collecting cases). Because the Funds cannot effectively determine Top Down's liability for unpaid contributions from January 1, 2023, through present without an audit and review of payroll and employment records, it would be appropriate to order Top Down to submit the missing records identified in the Amended Complaint and motion papers. However, the open-ended request for additional records deemed necessary by representatives of the Funds will not be granted. An injunction's terms must be stated "specifically." Fed. R. Civ. P. 65(d)(1)(B). This request is open-ended and non-specific.

Turn next to the preclusion issues. This is the most recent of three cases the Funds have brought against Top Down. In the first case, filed January 22, 2024, the Funds sought delinquent fringe benefit contributions along with liquidated damages and unpaid interest owed by Top Down for the period of September 2023 through December 2023 due to Top Down's failure to submit remittance reports and pay the contributions pursuant to the CBA

terms.  Complaint, *Nilsen v. Top Down Constr., LLC*, No. 24-cv-162 (ECT/LIB) (D. Minn. Jan. 22, 2024) (*Nilsen I*), ECF No. 1.  The Funds obtained a default judgment and a writ of execution, and on April 22, 2024, they filed a satisfaction of judgment.  Judgment by Default, *Nilsen I*, No. 24-cv-162 (ECT/LIB) (D. Minn. Mar. 6, 2024), ECF No. 13; Writ of Execution, *Nilsen I*, No. 24-cv-162 (ECT/LIB) (D. Minn. Apr. 1, 2024), ECF No. 17; Satisfaction of Judgment, *Nilsen I*, No. 24-cv-162 (ECT/LIB) (D. Minn. Apr. 22, 2024), ECF No. 18.  In the second case, filed September 13, 2024, the Funds sought delinquent contributions owed from May 2024 and to require Top Down to submit fringe benefit contribution reports for June through November 2024.  *Nilsen v. Top Down Constr. LLC*, No. 24-cv-3650 (ECT/LIB), 2025 WL 80246, at *2–3 (D. Minn. Jan. 13, 2025) (*Nilsen II-1*).  The Funds ultimately obtained a default judgment for the delinquent contributions owed from May 2024, and the remittance reports from June through November 2024 (which showed zero hours worked), along with liquidated damages, interest, and attorneys' fees and costs.  *Nilsen v. Top Down Constr. LLC*, No. 24-cv-3650 (ECT/LIB), 2025 WL 1474139, at *2 (D. Minn. May 5, 2025) (*Nilsen II-2*).

Here, the Funds seek to conduct an audit that encompasses the period for which delinquent contributions were obtained in both *Nilsen I* and *Nilsen II*.  The Funds argue res judicata does not apply to the current suit for two reasons.  (1) Res judicata is an affirmative defense, and unless asserted by the defendant it is waived.  ECF No. 28 at 7.  (2) The Funds

assert that res judicata requires that the "claims to be precluded are identical to those determined in the prior proceeding."[3]  *Id.* at 8.

Neither of these arguments is entirely correct.  (1) Although res judicata is an affirmative defense and may be waived, "[a] court may dismiss a case based on *res judicata sua sponte*" for "the avoidance of unnecessary judicial waste."  *Emerald Pointe, LLC v. Taney County*, 78 F.4th 428, 432–33 (8th Cir. 2023) (citing *Arizona v. California*, 530 U.S. 392, 412 (2000)); *accord, e.g.*, *Meyers v. Roy*, 714 F.3d 1077, 1080 (8th Cir. 2013); *see Int'l Union of Operating Eng'rs-Emps. v. Karr,* 994 F.2d 1426, 1429 (9th Cir. 1993) (holding res judicata bars subsequent suit to compel an audit where prior suit was brought to recover delinquent contributions); *May v. Parker-Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1010 (10th Cir. 1990) (same).  (2) And, under federal law, res judicata requires that the suits be "based upon the same claims or causes of action," which the Eighth Circuit has interpreted to mean "claims that arise out of the same nucleus of operative fact."

---

[3]   The Funds also argue collateral estoppel should not be applied.  ECF No. 28 at 7–14.  On that point, I agree.  "The general rule is that a default judgment does not give rise to collateral estoppel" because "[i]n the case of a judgment entered by . . . default, none of the issues is actually litigated."  *Seibert v. Cedar Rapids Lodge & Suites, LLC*, 583 B.R. 214, 219–20 (D. Minn. 2018) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)); *accord, e.g.*, *In re Leonard*, 644 F. App'x 612, 617 (6th Cir. 2016) ("In *Arizona v. California,* the Supreme Court explained that issue preclusion does not attach to judgment by default because 'none of the issues is actually litigated.'" (quoting *Arizona*, 530 U.S. at 414)); *Lee ex rel. Lee v. United States*, 124 F.3d 1291, 1296 (Fed. Cir. 1997), *opinion supplemented on reh'g*, 129 F.3d 1482 (Fed. Cir. 1997); *In re Sukut*, 357 B.R. 840, 844 (Bankr. D. Colo. 2006); *see also In re Jordana*, 216 F.3d 1087 (10th Cir. 2000) (Table Decision).  Although courts have "recognized an exception to the general rule when the party against whom preclusion is asserted substantially participated in the prior litigation before the default judgment," *Siebert*, 583 B.R. at 220 (citing cases), such an exception does not apply here because Top Down did not appear in either *Nilsen I* or *Nilsen II*.

*Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 731–32 (8th Cir. 2004).  This includes "all or any part of the transaction, or series of transactions, out of which the action arose."  *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting Restatement (Second) of Judgments § 24 (A.L.I. 1982)).  A court should determine what constitutes a "transaction" and a "series," "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Id.* (quoting Restatement (Second) of Judgments § 24 (A.L.I. 1982).

Regardless, the better course is not to apply res judicata at this stage.  The Funds are correct that res judicata is an affirmative defense "and must generally be pled or else [it] may be deemed waived."  *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997); *accord Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015) ("Claim preclusion . . . is an affirmative defense.  Ordinarily, it is incumbent on the defendant to plead and prove such a defense." (citation omitted)); *United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1043 (8th Cir. 1992) ("Res judicata is not a jurisdictional issue; rather, it is an affirmative defense that may be waived by the party allowed to assert it.").  Here, Top Down has had ample opportunity to assert the defense, but it has not.  *See Nali v. MaxPro Flooring, LLC*, No. 09-cv-3625 (MJD/JJK), 2013 WL 673779, at *6 (D. Minn. Feb. 25, 2013) (concluding that defendants waived the affirmative defense of res judicata by defaulting in an ERISA case).  And conservation of judicial

resources merits considerably less weight in situations like this where a party seeks default judgment.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** the Funds' Motion for Default Order and Injunction [ECF No. 26] is **GRANTED IN PART** as follows:

1.  Within ten (10) days of being served with a copy of this Order, Top Down must produce, either in paper form or electronically, the following records for audit and review for the period of January 1, 2023, through the date of this Order ("Audit Period"), if they have not already been submitted, to the Funds at the premises of Wilson-McShane Corporation, 3001 Metro Drive, Suite 500, Bloomington, MN 55425:

    a.  All payroll registers or journals;

    b.  All payroll registers or journals for "Top Down Construction a/k/a top down construction L.L.C.";

    c.  All time cards;

    d.  All Internal Revenue 941 quarterly reports;

    e.  All Form 1099s and 1096s;

    f.  All Internal Revenue W-2 and W-3 forms (to the extent such forms are issued by the employer prior to the audit being completed);

11

g.  All documents evidencing payments to any individual for labor or services, regardless of whether Top Down classifies such individual as an employee or as a subcontractor;

h.  All cash disbursement reports or journals;

i.  All checking account bank statements including copies of all checks issued from the accounts of any company owned or related to Top Down, or from which benefits were paid;

j.  All Minnesota quarterly unemployment reporting forms (SUTAs) and quarterly tax forms;

k.  All Monthly Remittance Reports; and

l.  All records identifying the type of work performed by each employee and individual who has performed services for Top Down.

2.  The amount Top Down owes in unpaid contributions, liquidated damages, interest, and reasonable attorneys' fees and costs will be determined as follows:

    a. Upon receiving the necessary records from Top Down and completing an audit, the Funds may file and serve a motion seeking entry of default judgment for unpaid contributions and liquidated damages, if any, interest on that amount, and reasonable attorneys' fees and costs.

    b. Top Down may then file and serve a response within ten (10) days of being served with the Funds' motion.

c.  The Court will examine the parties' submissions and issue an order of judgment.  No hearing will be held unless ordered otherwise.

Dated: February 23, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court

13